IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| NEW WAY MACHINE COMPONENTS, INC. t/a NEW WAY AIR BEARINGS | Case No. 24-11362(AMC) |
| **Debtor** | |

**MOTION OF DEBTOR FOR AN ORDER PURSUANT TO 11 U.S.C. § 363(c) AND FED. R. BANKR. P. 4001 AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION**

New Way Machine Components, Inc. t/a New Way Air Bearings (the "Debtor"), by and through its proposed counsel, Karalis PC, hereby moves this Court, pursuant to § 363 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order Pursuant to 11 U.S.C. §363(c) and Fed. R. Bankr. P. 4001 Authorizing Debtor to Use Cash Collateral and Provide Adequate Protection, (the "Motion") and in support thereof, avers as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.  Venue of the Debtor's Chapter 11 case and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory predicate for the relief requested herein are § 363 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules.

i.
**BACKGROUND**

4.  On April 22, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under subchapter V of Title 11 of the Bankruptcy Code.

5.  Since the Petition Date, the Debtor has remained in possession of its assets and continued management of its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6.  A description of the Debtor's business and the facts precipitating the filing of its Chapter 11 proceeding is set forth in the Declaration of Andrew J. Devitt in Support of Chapter 11 Petition and First Day Motions. Those facts, to the extent relevant, are incorporated herein by reference.

**PRE-PETITION FINANCING PROVIDED TO THE DEBTOR
BY PNC BANK, NATIONAL ASSOCIATION AND PNC EQUIPMENT FINANCE, LLC**

**A.   The Line of Credit Note.**

7.  On April 19, 2023, PNC Bank, National Association ("PNC") extended credit to the Debtor, as borrower, evidenced by an Amended and Restated Loan Agreement dated April 19, 2023 (the "Loan Agreement") and an Amended and Restated Revolving Line of Credit Note in the principal amount of $2,750,000.00 (the "Line of Credit Note") [Loan No. 607959977]. The Loan Agreement and the Line of Credit Note were amended and restated various times over the years.

8.  The Line of Credit Note evidences a revolving line of credit. The Debtor was able to borrow, repay and reborrow under the Line of Credit Note and PNC was able to advance and re-advance under the Line of Credit Note from time to time.

9.  The amounts outstanding under the Line of Credit Note bear interest at a rate per annum which is equal to the sum of (A) the Daily BSBY Rate (as defined in the Line of Credit Note) plus (B) 275 basis points (2.75%). Accrued interest was due and payable on the same day of each month with the outstanding principal balance and any accrued but unpaid interest due and payable on the maturity date of the Line of Credit Note.

10. The maturity date of the Line of Credit Note is April 30, 2024.

11. As of the Petition Date, the balance owed under the Line of Credit Note was in the approximate amount of $2,627,242.40.

12. On March 20, 2024, PNC declared a default under the Line of Credit Note due to *inter alia* (i) borrower (Debtor) allowing to exist $2,924,000 of indebtedness for amounts owed by borrower (Debtor) to Nick Hackett and (ii) borrower (Debtor) removing Nick Hackett as president. In addition, PNC also decided to permanently suspend the borrower's (Debtor's) ability to draw on the Line of Credit Note.

**B.     The First Term Note.**

13. On December 28, 2021, PNC extended credit to the Debtor, as borrower, evidenced by a term note in the in the original principal amount of $181,716.31 (the "First Term Note") [Loan No. 610695982].

14. The amounts outstanding under the First Term Note bear interest at 4.05% per annum.

15. Principal and interest under the First Term Note are due and payable in monthly installments in the amount of $3,355.43.

16. The maturity date of the First Term Note is December 27, 2026.

17. As of the Petition Date, the balance owed under the First Term Note was in the approximate amount of $104,529.65.

18. On March 20, 2024, PNC also declared a default under the First Term Note.

**C.     The Second Term Note.**

19. On December 28, 2022, PNC extended credit to the Debtor, as borrower, evidenced by a term note in the in the original principal amount of $600,607.15 (the "Second

Term Note" [Loan No. 611138284], and together with the Line of Credit Note and the First Term Note, the "Notes").

20. The amounts outstanding under the Second Term Note bear interest at 6.70% per annum.

21. Principal and interest under the Second Term Note are due and payable in monthly installments in the amount of $11,835.34.

22. The maturity date of the Second Term Note is December 28, 2027.

23. As of the Petition Date, the balance owed under the Second Term Note was in the approximate amount of $468,929.15.

24. On March 20, 2024, PNC also declared a default under the Second Term Note.

**D.** **The Alleged Security Interest held by PNC.**

25. Pursuant to the terms of the Loan Agreement, in order to secure the Debtor's obligations under the Notes, the Debtor granted to PNC, among other things, a security interest in any and all of the personal property of the Debtor of any nature whatsoever.

26. PNC alleges that it perfected its security interest by the filing of its UCC-1 financing statement with the appropriate governmental agencies.

27. On or about July 25, 2018, PNC filed with the Secretary of the Commonwealth of Pennsylvania UCC-1 Financing Statement No. 2018072500513 naming New Way Machine Components, Inc. as debtor and asserting a security interest the following:

> The Collateral includes all assets of the Grantor, of every kind and nature, now existing and hereinafter acquired and arising wherever located, including without limitation, accounts (including healthcare insurance receivables and credit card receivables), deposit accounts, commercial tort claims, letter of credit rights, chattel paper (including electronic chattel paper), documents, instruments, investment property, general intangibles (including payment intangibles), software, goods, inventory, equipment, furniture and fixtures, all supporting obligations of the foregoing, and all cash and noncash proceeds and products (including without

limitation insurance proceeds) of the foregoing, and all additions and accessions thereto, substitutions therefor and replacements thereof.

28. A UCC-3 Continuation Statement was filed by PNC on February 15, 2023 at File No. 20230215030724.

E. **Equipment Financing Provided by PNC Equipment Finance, LLC.**

29. As of the Petition Date, the Debtor's secured equipment financing debt owed to PNC Equipment Finance, LLC ("PNC Equipment Finance") was in the approximate amount of $83,375.00.

30. On July 12, 2019, PNC Equipment Finance extended credit to the Debtor, as borrower, evidenced by an amended and restated equipment line of credit note in the original principal amount of $500,000.00 (the "First Equipment Line of Credit Note") [Loan No. 98984531-4]. As of the Petition Date, the balance owed under the First Equipment Line of Credit Note was in the approximate amount of $41,281.50.

31. On November 16, 2020, PNC Equipment Finance extended credit to the Debtor, as borrower, evidenced by an equipment line of credit note in the original principal amount of $175,000.00 (the "Second Equipment Line of Credit Note" [Loan No. 98984531-6], and together with the First Equipment Line of Credit Note, the "Equipment Line of Credit Notes"). As of the Petition Date, the balance owed under the Second Equipment Line of Credit Note was in the approximate amount of $42,093.87.

32. PNC Equipment Finance alleges that it is secured on certain of the Debtor's equipment in connection to the Equipment Line of Credit Notes.

33. PNC Equipment Finance filed with the Secretary of the Commonwealth of Pennsylvania UCC-1 the following Financing Statements naming New Way Machine

Components, Inc. as debtor and asserting a security interest in certain equipment owned by the Debtor:

    (a)    UCC-1 Financing Statement No. 20200071001487 filed on July 10, 2020 and

    (b)    UCC-1 Financing Statement No. 2020111800175 filed on November 18, 2020 as amended by UCC-1 Financing Statement No. 2021072800289 filed on July 28, 2021 restating the covered collateral from "all assets" to certain equipment set forth therein.

34. On March 20, 2024, PNC, in its own capacity and as successor to PNC Equipment Finance, declared a default under the Equipment Line of Credit Notes.

35. The Equipment Line of Credit Notes are secured only by certain equipment owned by the Debtor and **not** the Debtor's cash collateral.

## USE OF CASH COLLATERAL

36. The Debtor has met with PNC Bank and is engaged in negotiations regarding a consensual agreement with PNC on the Debtor's use of cash collateral and adequate protection to be afforded to PNC after the Petition Date. In the event no agreement has been reached by the hearing date, the Debtor is requesting that the Court authorize the use of cash collateral.

37. The Debtor, in the normal course of its business, incurs obligations to suppliers for a variety of goods and services and to its employees which are essential to the continued existence of the Debtor as a going concern. Absent the immediate authority to use its cash the Debtor does not have the funds with which to conduct business.

38. The Debtor requires an immediate hearing to at minimum authorize the use of cash collateral for immediate expenditures and operating expenses. The Debtor has prepared a 7-week budget (the "Budget") of its expected revenue from operations and operating costs which is attached hereto as "Exhibit A" and made a part hereof.

39. Moreover, the Debtor's next payroll comes due on May 2, 2024. An abrupt cessation of the Debtor's business would cause extreme hardship to the Debtor's customers, its creditors, and employees. Simply stated, in order to continue the operation of the Debtor's business, it is necessary for the Debtor to immediately be authorized to use its cash collateral.

40. It is also crucial that the Debtor's post-petition payroll obligations be paid as these obligations come due.

41. The Debtor must maintain its relationship with its employees so that the essential services they provide are uninterrupted. If the Debtor's present employees terminate their employment, the Debtor will be forced to hire new, untrained employees. As a result, clients will receive less than satisfactory service. The Debtor will suffer negative publicity and its relationship with its creditors could also be jeopardized.

## **RELIEF REQUESTED**

42. The Debtor requests that the Court authorize the Debtor to use (a) cash, (b) proceeds of the pre-petition collateral, and (c) such other funds that the Debtor obtains post-petition which may be subject to PNC's pre-petition security interest.

43. The Debtor requests authority to use cash collateral in the amount to be set forth in the Budget.

44. The use of cash collateral is necessary in order for the Debtor to be able to operate and pay its post-petition obligations as they come due.

45. Approval of the Debtor's request to use cash collateral is in the best interest of the Debtor, its estate and creditors.

46. In accordance with Bankruptcy Rule 4001, the Debtor requests that the use of cash collateral first be preliminarily approved and then subsequently be finally approved at a subsequent hearing upon further notice to parties in interest.

47. In accordance with Bankruptcy Rule 4001, the Debtor requests that the final hearing be scheduled so that at least fourteen (14) days-notice has been provided to parties in interest.

48. The entry of any Order authorizing the use cash collateral is without prejudice to the rights of the Debtor, its creditors, any trustee appointed herein, or other party in interest, to contest the validity, extent or priority of any rights granted pursuant to any pre-petition loan agreement or any security interest arising out of or related to any pre-petition loan agreements.

49. Neither the Debtor's use of cash collateral nor any payments that may be authorized by the Court to PNC constitutes a waiver by PNC or the Debtor or any other party in interest of any right or claim each may now have or in the future have with respect to any issue relating to the validity, extent or priority of PNC's security interests.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an Order granting the Motion and for such other relief as the Court deems just and appropriate under the circumstances.

**Respectfully submitted,**

**KARALIS PC**

By: ___/s/ Aris J. Karalis_____
ARIS J. KARALIS
ROBERT W. SEITZER
ROBERT M. GREENBAUM
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
akaralis@karalislaw.com
rseitzer@karalislaw.com
rgreenbaum@karalislaw.com

*Proposed Attorneys for the Debtor*

Dated: April 22, 2023